UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CONSOLIDATED ENERGY DESIGN INC., | Case No. 13-cv-08747 (KBF) |
| Plaintiff, | |
| -against- | **COMPLAINT** |
| THE PRINCETON CLUB OF NEW YORK, | |
| Defendant. | |

Plaintiff Consolidated Energy Design Inc. ("**CED**"), by and through its attorneys The Stolper Group, LLP, as and for its complaint against defendant The Princeton Club of New York ("**Defendant**" or the "**Club**"), alleges as follows:

## NATURE OF ACTION

1. This is a breach of contract action arising out of Defendant's failure to pay invoices for energy consulting and engineering services in excess of $250,000.00.

2. Plaintiff CED had a successful 13-year relationship with Defendant, providing various energy consulting services requested by Defendant over that time. In the summer of 2007, Defendant requested that CED provide specific energy consulting services with respect to a tri-generation plant project for the Club. CED provided such services between June and October 2007 in reliance on the parties' 13-year billing and payment practice. After CED voluntarily terminated its services for the project, CED notified Defendant that an invoice for the services would be forthcoming. In July 2008 CED provided Defendant with an invoice along with extensive back-up materials in support of the invoice. Defendant ignored the invoice, without basis or explanation, and to date has not paid the invoice. CED attempted to resolve the matter several times over the years, most recently in September 2013, but Defendant has not

1

acted in good faith. CED has no choice but to initiate this litigation and permanently sever its relationship with Defendant.

## PARTIES

3. Plaintiff is a New Jersey corporation operating pursuant to the laws of the State of New Jersey. Its principal place of business is located at 1933 Highway 35, No. 367, Wall, New Jersey, 07719-3502.

4. Upon information and belief, Defendant The Princeton Club of New York is a private club located at 15 West 43rd Street, New York, New York, 10036.

## JURISDICTION & VENUE

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 (a)(1) since the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

6. This Court has personal jurisdiction over Defendant because it is located and entered into a contract within the State of New York.

7. Venue in this District is proper pursuant to 28 U.S.C. §1391(a), because a substantial part of the events giving rise to the claims occurred in this District.

## FACTUAL ALLEGATIONS

8. Plaintiff CED is an energy consulting firm that provides services in the energy conservation arena. CED's engineers evaluate Heating, Ventilation & Air Conditioning ("**HVAC**"), lighting, Domestic Hot Water ("**DHWS**") and other building systems.

9. CED provided such services to the Princeton Club over a 13-year period. During that time, the Club paid CED in excess of $2 million in fees. More than half of the monies were paid not based on written contracts but rather pursuant to CED invoices issued after

the requested work had been completed. In other words, more often than not, the Club requested certain services orally (telephonically or at meetings), CED fulfilled those requests, sent invoices or purchase orders to the Club after-the-fact and then the Club paid the invoices.

10.  In early 2007, the Club solicited bids for engineering services in connection with a tri-generation plant project (the "**Project**"). The Club sought to replace two antiquated and inefficient steam absorption chillers with one gas fired Broad cogen enabled absorption chiller. The energy savings were anticipated to be significant.

11.  CED submitted a bid on June 6, 2007, with clarifications submitted on or about July 17, 2007.

12.  On or about July 25, 2007, the Club informed CED that it had chosen Siemens, a large energy savings firm, to proceed as the lead project development firm on the Project. CED's claims in this lawsuit are not based on any of the time or effort CED expended in providing its bid to the Club.

13.  Subsequent to the Club's selection of Siemens, the Club insisted that CED work under Siemens to provide engineering support and look out for the Club's best interests. Among other things, the Club requested that CED serve on the mechanical, electrical, plumbing and associated architectural design team working through Siemens. The Club called upon CED to assist in developing a Scope of Work, budget and other Project-related information based on CED's unique knowledge of the Club over its 13-year history. The Club was under pressure to move the Project along for the summer 2008 cooling season (because it would take at least six months to get the appropriate equipment from China).

14.  CED obliged the Club's request, providing Siemens with confidential and proprietary information relating to the Club that CED had developed over the aforementioned

13-year history.  Among other things, CED provided building load calculations to determine heating, cooling and ventilation capacities.  As CED's principal, Rey Montalvo, explained to the Club's Manager, Larry Hines, in one particular email exchange:  "we felt we needed to do so if for nothing else, to keep the project moving forward and on schedule so the [Club] would not get in a jam."

15. CED and the Club (or the Club's representatives) had extensive communications with respect to CED's Project-related work.  A summary of these communications was provided to the Club on July 3, 2008 (and at various times thereafter) in conjunction with the invoice for services rendered.

16. The work CED did to assist the Club represented real energy consulting services from which the Club derived substantive benefit.  For example, CED toured other Broad Absorption Chiller facilities in August 2007 with Club representatives at the Club's insistence to help advise on the scope and budget of the Project and the viability of the equipment.  In addition, the Club required CED to attend (and CED both attended and participated in) regular Project meetings and telephone conferences, including the Project kickoff meeting.

17. While CED provided energy consulting services (mostly) through Siemens during this period, ultimately CED could not work out a long term agreement with Siemens due to CED's stated concerns about Siemens (the Club's termination of Siemens a year later may have validated CED's concerns).  The lack of an agreement with Siemens and CED's decision to terminate its role with the Project on or around October 12, 2007 had no impact on the Club's obligation to pay for CED's work prior to termination.  CED provided services (not bid work) based on the Club's representation that CED was part of the design team and based on the 13-year history CED would be paid.

18.     The Club knew that it would be invoiced for CED's design team work. Aside from the parties' 13-year billing and payment practice, at around the time CED ceased working on the Project in October 2007, there were a series of emails and oral communications on the topic. Among the emails was one from Siemens requesting that CED forward to the Club an invoice for all work performed. In addition, at a December 5, 2007 meeting with the Club's Manager Larry Hines, CED's principal so informed Mr. Hines that a bill for CED's work on behalf of the Club would be forthcoming. Mr. Montalvo (of CED) followed up the meeting with an email on December 28, 2007 in which he explained:

> CED continued to attend mandatory job meetings and provide engineering consulting services to Siemens so that the [Club] would not fall behind schedule on this project. The engineering consulting services CED provided to the [Club] contained information that was proprietary and confidential to CED and which CED would not normally share with any competitor (including Siemens). CED provided this proprietary and confidential information for the benefit of the [Club], as CED negotiated in good faith with Siemens, because of our long relationship with the [Club] and your assurances from you and Steve Hall that we would get the contract and work together with Siemens to complete this project for the [Club].
>
> All of the engineering consulting services CED provided benefited the Club because this was work that needed to be provided and allowed the project to move forward. Therefore, as I mentioned at our 12/5/07 meeting, I am preparing an invoice to the [Club] for the engineering consulting services we provided to the [Club].

19.     The Club did not object or otherwise challenge CED on this point.

20.     It took some time to compile the invoice and its 80+ page backup documentation. A delay in providing an invoice, even a delay of several months, was not out of the ordinary between the Club and CED over its 13-year history. CED provided the invoice and backup in July 2008. Mr. Montalvo followed up with Mr. Hines via phone call and email on several occasions. He even had a meeting with Mr. Hines to discuss the invoice. Mr. Hines

opted to ignore the invoice. After multiple efforts to address the invoice with Mr. Hines, Mr. Montalvo directed the invoice to the Club Finance Chair Wayne Comer in July 2009.

21. CED's subsequent efforts to have the Club pay the outstanding invoice proved futile. The Club's refusal to pay the invoice left CED with no choice but to initiate this litigation.

## FIRST COUNT: BREACH OF CONTRACT

22. CED repeats and re-alleges the allegations contained in paragraphs 1 through 21 of the Complaint.

23. The Club insisted that CED provide engineering services for the Project and assured CED that it would be paid for rendering such services. At no time did the Club state or request that CED provide services on a pro bono basis.

24. The Club entered into a binding oral agreement with CED for the provision of engineering services.

25. CED relied on the Club's assurance of payment, and the 13-year history of the Club paying invoices based on oral requests for services.

26. CED performed the work, invoiced the Club for its services and the Club to date refuses to pay the invoice. The Club has unjustifiably and inexcusably breached, and continues to breach, its payment obligation.

27. As a direct and proximate result of the Club's breach, CED has been damaged in an amount to be proven at trial but no less than $250,000.00 plus statutory interest and fees.

## SECOND COUNT: PROMMISORY ESTOPPEL

28. CED repeats and re-alleges the allegations contained in paragraphs 1 through 27 of the Complaint.

29. The Club made a clear and unambiguous promise to CED that it would pay CED for the engineering services requested by the Club.

30. Based on the thirteen year history between the parties, CED reasonably relied on the Club's promise.

31. The Club's failure to pay more than $250,000.00 for services provided causes unconscionable injury to CED.

### THIRD COUNT: UNJUST ENRICHMENT

32. CED repeats and re-alleges the allegations contained in paragraphs 1 through 31 of the Complaint.

33. The Club has been enriched by the services provided by CED at CED's expense. The Club requested the services but the services were never intended as a gift or act of good will; the Club promised payment and CED obliged the Club's need for immediate performance.

34. In equity and good conscience restitution by the Club to CED should be made.

### FOURTH COUNT: ACCOUNT STATED

35. CED repeats and re-alleges the allegations contained in paragraphs 1 through 34 of the Complaint.

36. CED provided services to the Club over a 13-year period. More than half of those services were pursuant to oral contracts between the parties. CED charged and the Club paid for the hourly rates of CED.

37. In June 2007 the Club insisted that CED provide services for the Project and CED obliged. The Club agreed to pay for the services in a manner consistent with the payment of prior services provided by CED.

38. Upon CED's provision of services, CED became a creditor of the Club. CED subsequently submitted an invoice to the Club for the services rendered based on the agreed upon (and historical) rates of service.

39. By the provision of its invoice, CED rendered to the Club full and true accounts of the indebtedness due and owing by the Club for the services provided. The invoice was delivered to and received and retained by the Club without any objection to the contents of said statements.

**WHEREFORE**, CED demands that judgment be entered in its favor and against Defendants as follows:

A. Compensatory damages in an amount to be proven at trial but in excess of $250,000, plus statutory interest accruing from the time of breach.

B. Consequential damages to be determined at trial.

C. Attorneys' fees, costs of suit, interest and such other relief as the Court deems fair and equitable.

D. That CED be awarded such other and further relief as the Court may deem just and proper.

## JURY DEMAND

DATED: New York, New York
December 5, 2013

Respectfully submitted,

/s/ Michael Stolper
Michael Stolper
THE STOLPER GROUP LLP
241 Centre Street
Sixth Floor
New York, NY 10013
(212) 337-3502
*Attorneys for Plaintiff*
*Consolidated Energy Design Inc.*